# DISTRICT OF COLUMBIA *v.* HARPER.

MUNICIPAL CORPORATIONS; STREETS AND HIGHWAYS; NEGLIGENCE.

The District of Columbia as a municipality is liable to a pedestrian for personal injuries, resulting from falling on a slippery sidewalk,

where the dangerous condition was created by seepage through the walls of a viaduct, which the commissioners of the district, who were required to pass upon the construction plans and accept the completed structure only when satisfactory, as well as to maintain. the sidewalks thereunder, had permitted to be constructed, although questioning the sufficiency thereof, and they knew of the dangerous condition of the walk, and permitted such condition to exist for several years. (Citing *Domer* v. *District of Columbia,* 21 App. D. C. 284; *O'Dwyer* v. *Northern Market Co.* 24 App. D. C. 81; and *Dotey* v. *District of Columbia,* 25 App. D. C. 232.)

No. 2517.   Submitted May 9, 1913.   Decided June 2, 1913.

HEARING on an appeal by the defendant from a judgment of the Supreme Court of the District of Columbia, on verdict, in an action brought to recover damages for personal injuries.

*Affirmed.*

The COURT in the opinion stated the facts as follows:

The District of Columbia, defendant below, appeals from a judgment in the supreme court upon the verdict of a jury in an action for the recovery of damages for personal injuries sustained by the plaintiff, Elizabeth J. Harper, as the result of a fall while walking on the sidewalk under the H street, N. E., railroad viaduct, on November 22, 1909.

The action was against both the District of Columbia and the Washington Terminal Company, the declaration alleging that this viaduct was so carelessly and negligently constructed and maintained that "excrement, offal, slop, water, drainage, moisture, and slime" seeped through the abutments thereof and upon the street, so that said objectionable matter "formed a slippery and dangerous place on the said sidewalk, of which the defendants, and each of them, had notice and knowledge." The duty of the District of Columbia to use reasonable care in maintaining said sidewalk in a reasonably safe condition is then alleged, and its breach of duty is set forth in part as follows: "The defendant, the District of Columbia, obligated and

charged by law as aforesaid, and with full knowledge of the negligence and carelessness of its codefendant aforesaid, on, to wit, the day and year last aforesaid, and for a long time prior thereto, to wit, for four years, carelessly and negligently suffered and permitted the said excrement, offal, refuse, moisture, water, and drainage aforesaid to be and remain upon the said side-walk, as aforesaid, so that the same became and was a menace to pedestrians," etc.

The evidence of the plaintiff tended to show that this viaduct is over 760 feet long, and on account of faulty construction of the abutments thereof, water that had filtered through the clay back of the abutments, seeped through said abutments and onto the sidewalk, and formed a "gummy, slippery substance that covered the sidewalk." The evidence further tended to show that this condition existed from the time said viaduct was con-structed, in 1904, until some time in 1910, and there was evi-dence tending to show negligence on the part of the District in failing to remove this substance from the sidewalk; that much greater care was exercised in keeping the street free from said slippery substance than was practised in keeping the sidewalk free therefrom; that said walk was suffered to remain in a very dangerous condition. Plaintiff's evidence further tended to show that she was exercising due care at the time of her injury.

At the close of the plaintiff's evidence the District moved for a verdict, assigning as reasons that it had never approved the plans of the terminal company as to these walls; that it had done all it could "with its appliances and means" to keep said side-walk in a reasonably safe condition, and that it was the primary duty of the terminal company, as it caused the substance to be upon the sidewalk, to remove it. This motion was denied, but the motion of the terminal company for a directed verdict was granted. Upon what theory does not appear. The District then introduced evidence, and the case was submitted to the jury and a verdict returned for the plaintiff.

*Mr. Edward H. Thomas,* Corporation Counsel, and *Mr. William Henry White,* Assistant, for the appellant:

1. The obstruction, if the condition amounted to such, was lawful, and municipality is not liable. *Transportation Co.* v. *Chicago,* 99 U. S. 635; *Wolf* v. *District of Columbia,* 21 App. D. C. 470; *Howes* v. *District of Columbia,* 2 App. D. C. 188; *Swart* v. *District of Columbia,* 17 App. D. C. 413.

2. There was a distinct, efficient cause, over which the district had no control, and it is not liable. *Swart* v. *District of Columbia,* 17 App. D. C. 407; *Rowell* v. *Lowell,* 7 Gray, 100; *Taylor* v. *Providence,* 8 R. I. 352; *McLoughlin* v. *Philadelphia,* 142 Pa. 80.

3. The municipality is not liable for a mere slipperiness of the street. *Chase* v. *Cleveland,* 44 Ohio St. 515; *Smith* v. *Bangor,* 72 Me. 249; Jones, Neg. 6, 201; Dill. Mun. Corp. sec. 1697, citing many cases; *Braburg* v. *Des Moines,* 63 Iowa, 523; *Borough* v. *Cline,* 100 Pa. 119; *Taylor* v. *Yonkers,* 105 N. Y. 202; *Mueller* v. *Milwaukee,* 110 Wis. 623; *Chamberlain* v. *Oshkosh,* 84 Wis. 292; *Harrington* v. *Buffalo,* 121 N. Y. 147; *Nason* v. *Boston,* 14 Allen, 508; *Cook* v. *Milwaukee,* 27 Wis. 191.

*Mr. James B. Archer* and *Mr. John Lewis Smith,* for the appellee:

1. There is no difference in principle between a dangerous obstruction in the street resulting from a hole or excavation, and an equally dangerous obstruction resulting from matter thereon, which is liable to cause one to slip and to be injured. *O'Dwyer* v. *Market Co.* 24 App. D. C. 81; *District of Columbia* v. *Woodbury,* 136 U. S. 463; *Domer* v. *District of Columbia,* 21 D. C. App. 284; *Dotey* v. *District of Columbia,* 25 App. D. C. 232; *Pitman* v. *City,* 141 App. Div. 670; *Olson* v. *Worcester,* 142 Mass. 536; *Taylor* v. *Yonkers,* 105 N. Y. 202; *Frank* v. *Warsaw,* 129 App. Div. 936, 198 N. Y. 463.

2. The duty and consequent liability of the municipality to

keep its streets and sidewalks in a reasonably safe condition extend to those cases where the obstruction or unsafe condition is brought about by persons other than the agents of the city. *Birmingham* v. *Taloe,* 105 Ala. 170; *Galesburg* v. *Higly,* 61 Ill. 287; *Elkhart* v. *Ritter,* 66 Ind. 287; *Bourget* v. *Cambridge,* 159 Mass. 388; *Mac Evoy* v. *Saulte Ste. Marie,* 136 Misc. 172; *Carrington* v. *St. Louis,* 89 Mo. 208; *Foy* v. *Winston,* 126 N. C. 381; *Koch* v. *Williamsport,* 195 Pa. 488; *McKnight* v. *Seattle,* 39 Wash. 516; *District of Columbia* v. *Sullivan,* 11 App. D. C. 533; *Aiken* v. *Philadelphia,* 43 W. N. C. 501; *Hawks* v. *Northampton,* 116 Mass. 420.

Mr. Justice ROBB delivered the opinion of the Court:

It will be helpful in the determination of the issues here raised to review briefly the legislation under which this viaduct was constructed. The act of February 12, 1901, 31 Stat. at L. 774, chap. 354, for eliminating grade crossings for railroads in the District, and to authorize the construction of new terminals, etc., required all work of construction to be done "to the satisfaction and subject to the approval of the commissioners of the District of Columbia," who were "authorized to exercise such supervision over the same" as might be necessary "to secure the proper construction and maintenance thereof." Sec 7. An appropriation was made toward the cost of the construction of elevated terminals, viaduct, and structures within the city of Washington, such appropriations to be paid "upon presentation of a certificate by the commissioners of the District of Columbia that the said viaduct has been completed as required by this act." Sec. 8. The supplemental act of February 28, 1903, 32 Stat. at L. 909, chap. 856, required that the viaduct should be so constructed as to permit H, K, L, and M streets and Florida avenue to be passed and continued under the same through arched openings or spaces, and that "the said terminal company shall also grade and pave the said passageways at the time of their construction to the satisfaction of the commissioners of the District of Columbia, but thereafter the

maintenance of the pavements and roadways shall be provided for as in the case of other public highways in the District of Columbia." Sec. 3. "Before any portion of the work of construction" described in the act should be begun, plans thereof in accordance with the provisions of the act were required to be prepared by the company undertaking such work, and "submitted for approval to the commissioners of the District of Columbia;" and duly authenticated copies of said plans, after approval, were to be filed with the commissioners of the District of Columbia, and all work done in accordance therewith.

The plans for the construction of this viaduct are dated April 12, 1904. On June 21, following, the District commissioners, these plans having been submitted to them for approval, wrote the chief engineer in charge of the execution of said work, as follows: "The commissioners of the District of Columbia have the honor to return herewith the plans of the railroad subways on H and K streets, Northeast, in the city of Washington, in the District of Columbia, *which they have approved under date of the 17th instant.* Their approval of these plans is subject to the reservation of the right to require the building of detached walls in front of the abutments, if they deem it necessary. Before any money shall be paid under the act of Congress in relation to the terminal structure, your company shall, if required by the commissioners, deposit with the commissioners an amount sufficient to cover the cost of constructing these walls." On July 17, 1905, the assistant engineer of the District, in a written communication to the District engineer of highways, directed attention "to the condition of seepage and dampness prevailing in the masonry of the bridges of the Washington Terminal at H, K, L, and M streets, and Florida avenue, N. E., which seems to show failure in the water proofing of the back of walls." On July 19th Assistant District Commissioner Harding directed the attention of the terminal company to this alleged defect. The receipt of this letter was acknowledged by the terminal company on July 20th. In the letter the terminal company said: "We are about ready to start on this work and will then provide for the completion of gutters and opening up of down

spouts, which it is believed will prevent any further trouble."
On April 8, 1907, the assistant District engineer, in a written
communication to the District engineer of highways, again di-
rected attention "to the apparent necessity of washing the road-
way pavement under the H street terminal bridge at least once
a week, to remove accretions that ordinarily cause slipperiness;"
that "the gummy substance under the bridge is sufficiently
pernicious, at this time, to be unsafe for the foothold of horses."
The communication closes with the suggestion "that the time
is now opportune to permanently arrange for this cleaning
process, *which was anticipated as a condition to be met, when
the design of this bridge was approved."* On November 29,
1907, the assistant engineer of highways, in another communi-
cation, said: "Ample and reasonable time has been given to
ascertain the necessity for action on this matter, and it is rea-
sonably certain that *corrective measures are imperatively and
immediately necessary."* On December 2d, following, the Dis-
trict authorities again took up the question with the engineer
of the construction company, and on January 27, 1908, the
president of the board of commissioners, in a letter to the chief
engineer of the construction company, again directed attention
"to the fact that, as they (the commissioners) anticipated in
June, 1904, the construction of the subways under your tracks
on H street and K street are not satisfactory, and that the con-
dition is particularly bad in the H street subway. * * * The
engineer commissioner suggested at that time (1904) that a
thin inner and detached wall, at least for a portion of the height,
should be built, to protect pedestrians through the subway
against the bad conditions due partly to seepage and partly to
condensation," etc. Further correspondence ensued, resulting
in a communication from the commissioners to the construction
company, under date of April 27, 1908, that no further action
would be taken by the commissioners "pending the installation
of such back-drainage system of the walls of these subways,
provided that no unreasonable length of time is consumed in
doing the work." Nothing was done towards correcting ex-
isting conditions, however, prior to the injury of the plaintiff
in the latter part of November, 1909.

The sole ground of liability asserted against the District was its failure to use reasonable diligence to remove accretions from this sidewalk. It was conceded by counsel for the defendant that the District assumed control over the sidewalk and street in accordance with the provisions of law. It was further conceded that the condition of the sidewalk was known to the District officials, and hence to the District. At the request of the defendant, the following, among other, instruction, was given the jury: "The court instructs the· jury that evidence of constructive notice has been admitted as· material only on the question whether the District of Columbia had notice of an unsafe condition of said sidewalk, and the· question still remains whether, having had such notice, the District was or was not guilty of negligence in its treatment of the conditions at said place under all of the circumstances. If the District was not guilty of negligence, then it is not liable to the plaintiff. The District is charged with the duty of supervising the streets of this District, and keeping them in a condition fit for convenient use and safe against accident to· travelers, but it is simply bound to practise due care and diligence in the exercise of its powers and in the application of its· resources, means, and opportunities towards the objects named. If due care under the circumstances disclosed in the evidence in this case has been exercised by the District in an endeavor to make the sidewalk under said viaduct safe for travelers, then the plaintiff's accident is a misfortune for which the District is not responsible, and your verdict should be for the defendant."

The elimination of grade crossings and the construction of a union railroad station in the District constituted an undertaking of great magnitude and far-reaching importance to the people of this city. In the legislation effecting the execution of this great undertaking, large powers were conferred upon the commissioners of the District. Before work on the viaduct in question could be begun at all, the commissioners were required to be satisfied with the plans of the terminal company and, before payment of any of the $1,500,000 appropriated to the terminal company could be paid, a certificate by such commissioners of the completion of said viaduct as required by the

act was necessary. In 1904, therefore, the commissioners, by their qualified approval of the plans of the terminal company, made possible the erection of this viaduct. Upon the completion thereof, it became and was the duty of the District to maintain the pavements and roadways thereunder, "as in the case of other public highways in the District of Columbia." Act of February 28, 1903, sec. 3 (32 Stat. at L. 911, chap. 856). And there was ample evidence before the jury tending to show that the District did not, to quote from the prayer submitted by the defendant, "in its treatment of the conditions at said place under all the circumstances, * * * practise due care and diligence in the exercise of its powers and in the application of its resources, * * * in an endeavor to make the sidewalk under said viaduct safe for travelers," as it was in duty bound to do. *District of Columbia* v. *Woodbury,* 136 U. S. 450, 34 L. ed. 472, 10 Sup. Ct. Rep. 990; *O'Dwyer* v. *Northern Market Co.* 24 App. D. C. 81; *Domer* v. *District of Columbia,* 21 App. D. C. 284; *Dotey* v. *District of Columbia,* 25 App. D. C. 232. According to the undisputed facts the dangerous condition of the sidewalk under this viaduct was known to the District from the beginning. It was its duty, therefore, to practise reasonable care in the exercise of its powers and in the application of its resources, to render this sidewalk reasonably safe for public travel. The objectionable condition which caused the accident was not the result of a sudden storm or other unforeseen contingency. It grew out of a construction which the commissioners questioned, but nevertheless permitted and suffered to remain for several years. We think there was ample evidence to support the finding against the District.

Whether the terminal company is equally responsible, we need not determine, since the question is not before us.

Judgment affirmed, with costs.                    *Affirmed.*


A petition for the allowance of a writ of error from the Supreme Court of the United States was denied by the court of appeals October 8, 1913.